**WESTLAKE PLASTIC COMPANY,**
**Plaintiff,**

v.

**William A. O'DONNELL, III, Defendant.**

**Civ.A. No. 97–5653.**

United States District Court,
E.D. Pennsylvania.

Sept. 15, 1998.

John G. Bravacos, West Chester, PA, for Plaintiff.

Peter F. Vaira, Philadelphia, PA, for Defendant.

### *MEMORANDUM*

LOWELL A. REED, Jr., District Judge.

Presently before the Court is the motion of defendant William A. O'Donnell, III, ("O'Donnell"), to dismiss the amended complaint pursuant to Federal Rules of Civil Procedure 9(b), 12(b)(1) and 12(b)(6). Based on the following analysis, defendant's motion will be denied.

### I. Arguments of the Defendant

O'Donnell argues that plaintiff Westlake Plastic Company ("Westlake") did not plead facts sufficient to establish a prima facie case on its claims of racketeering under the Racketeer Influenced and Corrupt Organizations Act, ("RICO"), 18 U.S.C. § 1961 et seq., (Count III) breach of fiduciary duty (Count I) and fraud (Count II). Alternatively, O'Donnell argues that this Court must dismiss Westlake's state law claims (Counts I and II) for lack of subject matter jurisdiction should Westlake fail to state a federal RICO claim.

O'Donnell first attacks Westlake's civil RICO claim arguing that it has failed to allege a pattern of racketeering activity. Specifically, O'Donnell argues that Westlake failed to allege the elements of a pattern as well as the predicate acts of commercial bribery, mail fraud or wire fraud. Additionally, O'Donnell argues that Westlake failed to al-

lege the predicate acts with the appropriate specificity required by Federal Rule of Civil Procedure 9(b). O'Donnell also argues that Westlake has failed to allege that O'Donnell participated in the conduct of the enterprise's affairs through a pattern of racketeering activity or that Westlake suffered a cognizable injury.

Similarly, O'Donnell argues that Westlake failed to allege breach of fiduciary duty as set forth in 15 Pa. Cons.Stat. § 512 because Westlake did not suffer damage as a result of the alleged breach of duty. Finally, O'Donnell argues that Westlake failed to allege the following elements of fraud: intent, reliance and damages.

## II. Legal Standard

Rule 12(b) of the Federal Rules of Civil Procedure provides that "the following defenses may at the option of the pleader be made by motion: (6) failure to state a claim upon which relief can be granted." In deciding a motion to dismiss under Rule 12(b)(6), a court must take all well pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *See Jenkins v. McKeithen,* 395 U.S. 411, 421, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969).

The Federal Rules of Civil Procedure require only notice pleading. *See* Fed.R.Civ.P. 8(a) (providing that pleadings should contain "a short and plain statement of the claim showing that the pleader is entitled to relief"). A motion to dismiss the complaint for insufficiency of the pleadings should be denied "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *see also Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984).

■ Finally, where fraud is averred, the Federal Rule of Civil Procedure 9(b) "requires plaintiffs to plead with particularity the 'circumstances' of the alleged fraud in order to place defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent

behavior." *Seville Indus. Mach. v. Southmost Machinery,* 742 F.2d 786, 791 (3d Cir. 1984), *cert. denied,* 469 U.S. 1211, 105 S.Ct. 1179, 84 L.Ed.2d 327 (1985); *Regent Nat'l Bank v. K-C Ins. Premium Finance Co., Inc.,* 1997 WL 137309 at *2–*4 (E.D.Pa. Mar. 21, 1997). Whereas allegations of date, place and time will serve the purposes of Rule 9(b), nothing in the rule requires them. *Seville Indus. Mach.,* 742 F.2d at 791. In applying Rule 9(b), the Court of Appeals for the Third Circuit has admonished that "focusing exclusively on its 'particularity' language 'is too narrow an approach and fails to take account of the general simplicity and flexibility contemplated by the rules.' " *Christidis v. First Pennsylvania Mortgage Trust,* 717 F.2d 96, 100 (3d Cir.1983) (quoting 5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1298, at 407 (1969)); *Seville Indus. Mach.,* 742 F.2d at 791.

## III. Discussion

■ I conclude that the allegations contained in Westlake's complaint are sufficient to satisfy the requirements of notice pleading and Federal Rule of Civil Procedure 8(a) because it is not "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley,* 355 U.S. at 45–46, 78 S.Ct. 99. In addition, I conclude that the complaint comports with Federal Rule of Civil Procedure 9(b) which requires that fraud be pleaded with particularity. Westlake's complaint satisfies the requirements of this rule as it includes the particular representations made by the defendant which Westlake alleges were fraudulent and why they were false when made. Accordingly, I find that the defendant is on sufficient notice to frame a response to Westlake's allegations.

### A. Civil RICO Claim

■ To state a civil RICO claim under 18 U.S.C. § 1962(c), Westlake must plead the following four elements: 1) the existence of an enterprise affecting interstate commerce; 2) that O'Donnell was employed or associated with the enterprise; 3) that O'Donnell participated, directly or indirectly, in the conduct or affairs of the enterprise; and 4) that

O'Donnell participated through a pattern of racketeering activity that must include the allegation of at least two racketeering acts.[1] *See Shearin v. E.F. Hutton Group, Inc.*, 885 F.2d 1162, 1165 (3d Cir.1989) (citing *R.A.G.S. Couture, Inc. v. Hyatt*, 774 F.2d 1350, 1352 (5th Cir.1985)). In addition, Westlake must allege injury to its business or property as a result of the § 1962(c) violation. *See* 18 U.S.C. § 1964(c).

Westlake has properly alleged the existence of an enterprise affecting interstate or foreign commerce (Amended Complaint ¶¶ 48, 49). Westlake has also properly alleged that O'Donnell was associated with or employed by the enterprise (Amended Complaint ¶¶ 48, 50, 51). In addition, Westlake has properly alleged that O'Donnell participated directly and/or indirectly in the affairs of the enterprise (Amended Complaint ¶¶ 8, 16, 51).

### 1) Pattern of Racketeering

 Finally, Westlake has also pled the fourth element of a § 1962(c) claim, that O'Donnell engaged in a pattern of racketeering activity. A "pattern of racketeering activity" requires at least two acts of "racketeering activity" within a ten year period. 18 U.S.C. § 1961(5). In *H.J., Inc.*, the Supreme Court concluded that while two predicate acts are necessary to form a RICO "pattern of racketeering activity," they may not be sufficient. *H.J., Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 237–38, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989). The Supreme Court stressed that a plaintiff must also show "that the racketeering acts are related, and that they amount to or pose a threat of continued criminal activity." *Id.* at 239, 109 S.Ct. 2893. Predicate acts are considered related if they "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *United States v. Grayson*, 795 F.2d 278, 290 (3d Cir.1986) (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 n. 14, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985),

*cert. denied*, 481 U.S. 1018, 107 S.Ct. 1899, 95 L.Ed.2d 505 (1987)). In addition, "continued criminal activity," or continuity, refers to "a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *H.J., Inc.*, 492 U.S. at 242, 109 S.Ct. 2893 (citing *Barticheck v. Fidelity Union Bank/First National State*, 832 F.2d 36, 39 (3d Cir.1987)).

### a) Predicate Acts

Westlake's complaint sufficiently pleads related racketeering acts that amount to or pose a threat of continued criminal activity. First, Westlake alleges that O'Donnell, pursuant to a scheme to defraud Westlake of profits by self-dealing, committed mail and wire fraud between February 1994 and February 1996 in violation of 18 U.S.C. §§ 1341, 1343 (Amended Complaint ¶¶ 12–16, 54, 55). Such acts are considered "racketeering activity" under RICO. *See* 18 U.S.C. § 1961(1).

 In order to plead an instance of mail or wire fraud, the plaintiff must allege a scheme to defraud in which the defendant "causes" the mails or wires to be used in furtherance of the scheme, together with an allegation of specific intent to commit fraud. *See, e.g., Pereira v. United States*, 347 U.S. 1, 8–9, 74 S.Ct. 358, 98 L.Ed. 435 (1954). A defendant "causes" the use of the mails or wires in violation of federal law when, in furtherance of the scheme to defraud, he or she "does a act with knowledge that the use of the mails [or wires] will follow in the ordinary course of business, or where such use can reasonably be foreseen, even though not actually intended. . . ." *Id.*

Additionally, pursuant to Federal Rule of Civil Procedure 9(b), all "averments of fraud . . . shall be stated with particularity." In *Seville*, the Third Circuit set forth the standard for applying Rule 9(b) to RICO predicate acts of mail and wire fraud. *See* 742 F.2d at 791. Specifically, the court held:

> We approach this question this question mindful of our recent admonition that in

---

1. 18 U.S.C. § 1962(c) provides: It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

applying Rule 9(b), "focusing exclusively on its 'particularity' language 'is too narrow an approach and fails to take account of the general simplicity and flexibility contemplated by the rules.'" We conclude that the district court subjected Seville's allegations of fraud to too strict a scrutiny. Rule 9(b) requires plaintiffs to plead with particularity the "circumstances" of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior. It is certainly true that allegations of "date, place or time" fulfill these functions, but nothing in the rule requires them. Plaintiffs are free to use alternative means of injecting precision and some measure of substantiation into their allegation of fraud.

*Seville*, 742 F.2d at 791 (citations omitted).

█ The Court finds that the Amended Complaint sufficiently "inject[ed] precision and some measure of substantiation into [Westlake's] allegations of fraud," thereby satisfying Rule 9(b). Westlake alleges with specificity that O'Donnell used the mails in February 1994 and the telephone in June of 1994, purportedly in furtherance of the alleged scheme to terminate Westlake's distributors, create a new distributor (Performance Polymers) in which he had an interest, grant exclusive distribution rights to Performance Polymers while concealing his interest and preventing Westlake from realizing any "financial benefit" from eliminating a middleman (Amended Complaint ¶¶ 4–12, 16, 18–19, 26–27, 54). Westlake also alleges that O'Donnell's communications, both on the telephone and through the mails, during the course of defending a lawsuit against Westlake by its former distributor, were made purportedly in furtherance of O'Donnell's scheme (Amended Complaint ¶¶ 54). In addition, Westlake alleges that O'Donnell used the telephone to contact his associates in January and February of 1996 to prevent detection in furtherance of the scheme (Amended Complaint ¶¶ 54).

In addition, because Westlake's allegations include a charge that O'Donnell engaged in a scheme whereby he abused his position as Vice President of Marketing and Sales and ultimately deprived Westlake of "financial benefit," an essential element of this scheme was to cause the termination of Westlake's current European distributor and to cause Westlake to enter into an exclusive distribution contract with a company created by O'Donnell and his associates (Amended Complaint ¶¶ 4, 8–12). Westlake further alleges that O'Donnell's use of both the mails and the telephone were incident to this scheme, i.e., to set the scheme in motion (by, among other things, terminating Westlake's distributors) and perpetuate the scheme (by, among other things, preventing Westlake from discovering the scheme) (Amended Complaint ¶¶ 8–12, 54). Thus, I find that Westlake·has properly alleged predicate acts of mail and wire fraud to survive a motion to dismiss.

█ Moreover, "racketeering activity" includes "any act or threat involving murder, kidnaping, gambling, arson, robbery, bribery, extortion ... which is chargeable under State law and punishable by imprisonment for more than one year." 18 U.S.C. § 1961(1). Accordingly, Westlake's allegation that O'Donnell engaged in commercial bribery in violation of 18 Pa.C.S. § 4108 also constitutes a predicate act for purposes of its civil RICO claim.

Pennsylvania defines the crime of "commercial bribery" as follows:

An employee, agent or fiduciary commits a misdemeanor of the second degree when, without the consent of this employer or principal, he solicits, accepts, or agrees to accept any benefit from another person upon agreement or understanding that such benefit will influence his conduct in relation to the affairs of this employer or principal.

18 Pa.C.S. § 4108(a). As a second degree misdemeanor, commercial bribery is punishable by two years of imprisonment. 18 Pa. C.S. § 106(b)(7). Westlake has sufficiently pled the elements of commercial bribery: O'Donnell is an employee, who without the consent of his employer allegedly solicited or agreed to accept an interest in a entity to which he allegedly directed an exclusive European distributorship of Westlake products

(Amended Complaint ¶¶ 4, 8–12, 29). Moreover, Westlake alleges that O'Donnell secretly disclosed confidential information as a quid pro quo for an interest in Performance Polymers (Amended Complaint ¶ 9).

### b) Pattern

In addition to pleading the requisite predicate acts of racketeering, I conclude that Westlake has also properly alleged that the predicate acts form a pattern. Under the relatedness prong, Westlake has alleged that the predicate acts served the purpose of furthering O'Donnell's purported scheme, i.e., they have the same or similar purpose, results, participants and victims (Amended Complaint ¶ 54). *Coleman v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 1992 WL 368460 at \*5–\*6 (E.D.Pa. Dec. 2, 1992) (citing *H.J., Inc.,* 492 U.S. at 240, 109 S.Ct. 2893).

"Continuity" refers to a closed period of repeated conduct or past conduct that by its nature projects into the future with a threat of repetition. *H.J., Inc.,* 492 U.S. at 242, 109 S.Ct. 2893. A party alleging a RICO claim may demonstrate continuity over a closed period by pleading a series of related predicates extending over a substantial period of time. *Id.* Here, Westlake's allegations that the offending conduct began in January of 1994 and continued until February 1996 are sufficient to survive a motion to dismiss (Amended Complaint ¶ 54). *United States v. Pelullo,* 964 F.2d 193, 209 (3d Cir.1992) (holding that a jury could find a nineteen month period of racketeering activity sufficient to satisfy continuity requirement); *Swistock v. Jones,* 884 F.2d 755, 759 (3d Cir.1989) (fourteen month period of conduct may be sufficient to establish closed-ended continuity).

### 2) Injury to Business or Property

Finally, I conclude that Westlake has properly alleged injury to its business or property as a result of the § 1962(c) violation. *See* 18 U.S.C. § 1964(c). Westlake avers that as a result of O'Donnell's conduct, it was injured by: losing business in Europe, being made a defendant in a French action by the distributor O'Donnell had terminated, being disadvantaged in the negotiations of distribution terms with Performance Polymers (the entity O'Donnell and associates created), and has been unable to collect trade debt with Performance Polymers (Amended Complaint ¶ 58). In addition, Westlake alleges that as a result of O'Donnell's conduct, Westlake was deprived of "the entire financial benefit" of removing a middleman from the chain of distribution (Amended Complaint ¶ 12). Accordingly, I find that Westlake has alleged injury to its business as a result of O'Donnell's alleged fraudulent scheme sufficient to survive a motion to dismiss.

### B) Breach of Fiduciary Duty

Westlake's breach of fiduciary duty claims are governed by the ordinary notice pleading requirements of Federal Rule of Civil Procedure 8(a)(2). *See Miller v. Am. Tel. & Tel. Co.,* 507 F.2d 759, 761 (3d Cir. 1974). In Pennsylvania, the duty owed by an officer is that the officer discharge his or her duties "in good faith, in a manner he [or she] reasonably believes to be in the best interests of the corporation and with such care … skill and diligence, as a person of ordinary prudence would use under similar circumstances." 15 Pa.C.S. § 512. Westlake has alleged that O'Donnell owed Westlake a fiduciary duty and that O'Donnell betrayed this duty by engaging in undisclosed self-dealing against Westlake's best interest, and for his own financial benefit (Amended Complaint ¶¶ 8–12, 35–40). Although the Amended Complaint does not specifically allege that O'Donnell was unjustly enriched or that the distribution agreement with Performance Polymers was detrimental to Westlake, "a complaint should not be dismissed unless it appears that the plaintiffs would not be entitled to relief under any facts which they might prove in support of their claim." *Miller,* 507 F.2d at 761; *see also Hough/Loew Assocs., Inc. v. CLX Realty Co.,* 760 F.Supp. 1141, 1144–45 (E.D.Pa.1991). Accordingly, I find that Westlake has sufficiently alleged breach of fiduciary duty to survive a motion to dismiss.

### C) Fraud

The elements necessary to prove fraud under Pennsylvania law are: 1) a mis-

172

representation or a fraudulent utterance or non-disclosure; 2) an intention by the maker that the recipient will be induced to act; 3) justifiable reliance by the recipient upon the misrepresentation; and 4) damage to the recipient as a proximate result. *C & K Petroleum Products, Inc. v. Equibank*, 839 F.2d 188, 191 (3d Cir.1988). In its complaint, Westlake alleges that O'Donnell made misrepresentations and fraudulent non-disclosures by specifically denying any interest in Performance Polymers as well as intentionally concealing his interest on numerous other occasions (Amended Complaint ¶¶ 22, 27, 56). Westlake also alleges that O'Donnell induced Westlake to terminate its former distributer and transact business exclusively with Performance Polymers (Amended Complaint ¶¶ 8–12, 43). Westlake further alleges that, as Vice President of Marketing and Sales, O'Donnell had "a primary role in the worldwide selection, retention, and termination of distributors" and, therefore, Westlake was justified in relying on his decision to terminate the former distributor and extend an exclusive distributorship to Performance Polymers (Amended Complaint ¶¶ 4, 10–16, 22–23, 27). Finally, Westlake alleges that it was damaged as a result of O'Donnell's misrepresentations and omissions; specifically by a loss of business, by the resulting lawsuit by its former distributer, and by being disadvantaged in negotiating the terms of its agreement with Performance Polymers (Amended Complaint ¶¶ 12, 45). Accordingly, Westlake has properly pled the elements of fraud such to avoid a motion to dismiss.[2]

## IV. Conclusion

Based on the foregoing the motion will be denied.[3] An appropriate Order follows.

### ORDER

**AND NOW**, this 15th day of September, 1998, upon consideration of the motion of defendant William A. O'Donnell to dismiss the amended complaint pursuant to Federal Rules of Civil Procedure 9(b), 12(b)(1), and 12(b)(6), (Document No. 13) and the response of Westlake Plastic Company, and for the reasons set forth above in the foregoing memorandum, it is hereby accordingly **ORDERED** that the motion is **DENIED**.

**IT IS FURTHER ORDERED** that defendant shall file his answer no later than **October 5, 1998**.

---

2. As noted above, fraud must be pled with particularity. *See* Fed.R.Civ.P. 9(b). Although O'Donnell does not challenge Westlake's claim based on a lack of particularity, it should be noted that Westlake's common law fraud claim is based on the same constellation of fraudulent acts as the predicated acts of mail and wire fraud and with sufficient particularity to put O'Donnell on notice of the precise misconduct with which he is charged. *See Seville*, 742 F.2d at 791.

3. Because the federal RICO claim will not be dismissed, the Court need not address Defendant's argument that the state claims should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1), lack of subject matter jurisdiction.