357 B.R. 324 (2006)
In re JAMUNA REAL ESTATE, LLC, United Management Services, Inc., Bagga Enterprises, Inc., Debtors.
Marvin Krasny, in his capacity as Chapter 7 Trustee of United Management Services, Inc.; Marvin Krasny, in his capacity as Chapter 7 Trustee of Jamuna Real Estate LLC; Gary Seitz, in his capacity as Chapter 7 Trustee of Bagga Enterprises, Inc. and FL Receivables Trust 2002-A, Plaintiffs
v.
Pratpal Bagga; Khushvinder Bagga Ravinder Chawla; Hardeep Chawla Welcome Group, Inc.; K & P Real Estate LLC; World Apparel Products, Inc. d/b/a/ SJM Trading Company, d/b/a Ten Tigers; American Merchandise Co., Inc., a/k/a American Merchandising Co., Inc.; 21st Century Restaurant Solutions, Inc.; Brand Trade, Inc.; H.B. Properties, Inc.; H.B. Properties LLP; Sant Properties; John and Jane Does and ABC Companies, Defendants.
Bankruptcy Nos. 04-37130; 04-37132; 04-37136. Adversary Nos. 06-128; 06-129; 06-130.
United States Bankruptcy Court, E.D. Pennsylvania.
December 20, 2006.
*325 *326 *327 Lawrence J. Tabas, Deidre M. Richards, Lindsey Marie Glah, Obermayer Rebman Maxwell & Hippel LLP, Philadelphia, PA, Christopher F. Graham, Patrick E. Fitzmaurice, Robert H. Hermann, Thatcher Proffit & Wood LLP, White Plains, NY, for Plaintiffs.
Richard M. Simins, Jami B. Nimeroff, Buchanan Ingersoll & Rooney PC, Philadelphia, PA, Andrew Teitelman, Law Office of Andrew Teitelman, Huntingdon Valley, PA, for Defendants.

Opinion
STEPHEN RASLAVICH, Bankruptcy Judge.
Introduction.
The Plaintiffs filed in this Court a fifteen count complaint against the debtor corporations, related entities, and their principals. The Defendants have filed a motion to withdraw the reference of this adversary proceeding from the Bankruptcy to District Court. The District Court has remanded the motion to the Bankruptcy Court with a limited instruction: this Court must determine to what extent the Complaint raises core versus non-core matters.[1] Upon receipt of the remand order, the parties contacted this Court to request the opportunity to brief the issues. That request was allowed, the parties submitted briefs, and the matter was taken under advisement.[2]
Background
These claims had been originally brought by the creditor FL Receivables (FL) in the District Court. There, the Defendants filed a motion to dismiss two of the counts for failure to state, a claim. That motion would be granted and as discovery was about to proceed on the remaining claims, three of the corporate defendantsUnited Management, Jamuna Real Estate, and Bagga Enterprisesfiled *328 for bankruptcy under Chapter 7. The two Trustees assigned to handle the cases (Messrs. Krasny and Seitz)[3] joined with FL to file the same claims in this Court.[4] The Defendants filed a motion in the District Court requesting that the reference be withdrawn. That prompted the District Court to remand the case to this Court to determine which of the counts are core and which are non-core.
Core, Non-Core Proceedings and Bankruptcy Court Jurisdiction
The District Court's reference to core versus non-core matters necessarily implicates the jurisdictional parameters of the Bankruptcy Court.[5] A term of art, "core" in this context derives from the Supreme Court's ruling in Northern Pipeline Construction Co. v. Marathon Pipe Line Co., 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). There, the High Court held unconstitutional the jurisdictional grants of the Bankruptcy Act of 1978. Specifically, it struck down the provision which authorized Article I bankruptcy courts to hear certain matters that constitutionally could only be heard by courts whose judges are protected by the safeguards in Article III. Id. at 84, 102 S.Ct. at 2878 ("bankruptcy courts do not constitutionally have jurisdiction over claims for breach of contract and misrepresentation, [because they] involve a right created by state law, a right independent and antecedent to the reorganization petition that conferred jurisdiction upon the Bankruptcy Court") (emphasis in original). That ruling prompted Congress to pass the Bankruptcy Amendments and Federal Judgeship Act of 1984. Under the 1984 Amendments, the
[b]ankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title
28 U.S.C. § 157(b) (emphasis added).[6] A proceeding is classified as "core" under 28 *329 U.S.C. § 157 "if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case." In re Marcus Hook Development Park., Inc., 943 F.2d 261, 267 (3d Cir.1991) (quoting Beard v. Braunstein, 914 F.2d 434, 444 (3d Cir.1990)). Core proceedings represent those disputes so intertwined with the bankruptcy process that Congress has the power under Article I of the Constitution to direct a non-tenured judicial officer (i.e., bankruptcy judge) to render a final determination of their merits. See 1 Norton Bankruptcy Law and Practice 2d, 4.75 (1999) ("The word `core' was a shorthand word employed to signify issues and actions that traditionally formed part of the functions performed under federal bankruptcy law").
Where a matter does not qualify as "core" but has some meaningful nexus with the bankruptcy case, it may nevertheless be heard by the Bankruptcy Court on a preliminary basis:
A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11. In such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected.
28 U.S.C. § 157(c)(1) (emphasis added).[7] The Third Circuit has defined a "non-core" yet "otherwise related" proceeding as one whose:
"outcome . . . could conceivably have any effect on the estate being administered in bankruptcy." Pacor v. Higgins, 743 F.2d 984, 994 (3d Cir.1984) (emphasis omitted); see In re Guild, 72 F.3d at 1180-81. "[T]he proceeding need not necessarily be against the debtor or against the debtor's property." In re Guild, 72 F.3d at 1180-81. "`A key word in [this test] is conceivable. Certainty, or even likelihood, is not a requirement. Bankruptcy jurisdiction will exist so long as it is possible that a proceeding may impact on the debtor's rights, liabilities, options, or freedom of action or the handling and administration of the bankrupt estate.'" Id. at 1181 (quoting In re Marcus Hook, 943 F.2d at 264) (emphasis omitted).
Halper v. Halper, 164 F.3d 830, 837 (3d Cir.1999)(footnote omitted). A leading commentator opines:
In light of the Marathon case, the legislative history surrounding the 1984 jurisdictional provisions and the post-1984 case law, it seems clear that civil proceedings *330 encompassed by section 1334(b)'s "related proceedings" are those whose outcome could conceivably have an effect on the bankruptcy estate and that (1) involve causes of action owned by the debtor that became property of a title 11 estate under section 541 (as distinguished from postpetition causes of action, i.e., those that come into existence during the pendency of the bankruptcy case), or (2) are suits between third parties that "in the absence of bankruptcy, could have been brought in a district court or a state court."
1 Collier on Bankruptcy ¶ 3.01[4][c][ii] (Matthew Bender 15th Ed. revised). This matters for present purposes inasmuch as the parties agree that three of the fifteen counts in the Complaint do not raise core matters, but disagree as to whether all three are "otherwise related" to the bankruptcies. The Third Circuit has explained that a bankruptcy court may neither hear nor determine matters which are both non-core and un related. See Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir.1984) overruled on other grounds by Things Remembered, Inc. v. Petrarca, 516 U.S. 124, 116 S.Ct. 494, 133 L.Ed.2d 461 (1995); see also Torkelsen v. Maggio (In re Guild and Gallery Plus, Inc.), 72 F.3d 1171, 1181 (3d Cir.1996) (holding that third party's claim against trustee for failing to account for non-estate property was neither core nor related proceeding). The Court now turns to each of the fifteen counts to determine which raise "core" matters. See Halper, supra, 164 F.3d at 837 (explaining that where Court is confronted with disparate causes of actions in determining whether core matters raised, analysis must proceed on a claim-by-claim basis)[8]
Counts I and IIRICO
Counts I and II allege violations of the Racketeer Influenced and Corrupt Organizations Act of 1984[9] (RICO). The parties concur that these claims are non-core, although they are silent as to whether the claims are related. See Plaintiffs Brief, 5; Defendants' Brief, 6,7. In any event, the question is a legal one which means that the Court is not bound by what the parties agree on and must make the determination on its own. Mintze v. American General Financial Services, Inc., 434 F.3d 222, 228 (3d Cir.2006) citing Halper, 164 F.3d at 836-37.
While there is no controlling Third Circuit law on this issue, the Seventh Circuit has observed that the weight of authority holds that a RICO claim is a non-core, related proceeding. See Barnett v. Stern, 909 F.2d 973, 979-80 (7th Cir.1990) (holding that RICO claims against debtor individual and debtors' son were non-core, explaining majority rule and citing cases). In this jurisdiction, the two decisions on point follow that majority rule. See In re Schlein, 188 B.R. 13, 14 (E.D.Pa.1995) (granting withdrawal of reference of RICO claims against family members); see also In re Humphreys Pest Control Co., Inc., 35 B.R. 712, 714 (Bankr.E.D.Pa.1984) (on creditors' motion for relief from automatic stay to proceed with district court action alleging, inter alia, RICO claims, bankruptcy court noted that, under the Emergency Rule [the precursor of the current jurisdictional statute enacted in response to Marathon], these claims against the officers and agents of the debtor's corporation *331 would be "related proceedings"). This Court will be guided by that authority.
In this case, the Plaintiffs have alleged RICO violations against the individual defendants. Complaint, ¶¶ 160-186. A successful outcome of either RICO count would stand to benefit these bankruptcy estate. For that reason, the Court finds that Counts I and II raise non-core, related claims.
Counts III, X and XVPiercing the Corporate Veil
These three counts are premised on an alter ego theory. See Crimmins v. Arco Chemical Company, 1999 WL 199750 * 5 (E.D.Pa.1999) (noting that purpose of alter ego doctrine is to prevent individuals who have acted fraudulently or unjustly from protecting themselves from liability by using the corporate form) The remedy for such offense is to disregard the corporate entity. See Village at Camelback Property Owners Association Inc. v. Carr, 371 Pa.Super. 452, 460-61, 538 A.2d 528, 532-33 (1988) ("Piercing the corporate veil is a means of assessing liability for the acts of the corporation against the equity holders of the corporation.")
It is here that the parties register their first disagreement. Despite what is alleged in the Complaint,[10] Plaintiffs now maintain that Counts III and X are core and that Count XV is neither core nor non-core.[11]See Plaintiffs' Brief, 6, 9-10. Plaintiffs argue that what is sought here is turnover of diverted funds to the Debtor's estates. Id. 5, 9. That, they conclude, brings the claims within the specific example of "core" matters in § 157(b)(2). Id. Defendants argue that case law is to the contrary. Claims to pierce the corporate veil are based in common law. Defendants' Brief, 8.
The Third Circuit has observed that "actions to pierce the corporate veil, or alter ego action against the debtor corporation, are often considered non-core, `related to' proceedings." In re Phar-Mor, Inc., 22 F.3d, 1228, 1239 (3d Cir.1994) Here, the Plaintiffs alleged that the individual defendants abused the corporate form of the debtor corporations to defraud its creditors. See Complaint ¶¶ 187-202, 247-257, 273-74. The Court finds that while these claims are not "core" matters, they have the potential to affect this bankruptcy estate. Therefore, Counts III, X and XV are non-core, related matters.
Count IVFraudulent Transfer
Both sides maintain that this count raises a "core" claim. Among the illustrative examples of core proceedings in § 157(b)(2) are fraudulent transfers. See 28 U.S.C. § 157(b)(2)(H). In substance, Count IV alleges a classic case of both actual and constructive fraud. It is alleged that the Baggas intentionally siphoned off money from the' debtor for their own benefit and to the detriment of creditors. See 11 U.S.C. § 548(a)(1)(A); Complaint ¶ 206. Alternatively, it is alleged that this was done at a time when the Debtors were insolvent and, in exchange for which, the Debtors did not *332 receive reasonably equivalent value. See 11 U.S.C. § 548(a)(1)(B); Complaint ¶ 207. The Court thus finds the parties to be correct in classifying this count as a core proceeding.
Count VConversion
Plaintiffs argue that the conversion count raises a core claim because it is "in effect," a fraudulent transfer claim. Plaintiffs' Brief, 6. In arguing that the claim is non-core, Defendants liken it to an alter-ego cause of action: both are based on state common law; arose prepetition, and would exist independently of bankruptcy. Defendants' Brief, 9.
The Court takes up the Plaintiffs' premise first; to wit, that because the conversion claim is similar to the fraudulent transfer claim, it, too, should be deemed core. Similarities between a core claim and a non-core claim do not create bankruptcy court jurisdiction over the latter claim. Cf. In re Kamine/Besicorp Allegany, LP, 214 B.R. 953, 965 (Bankr.D.N.J.1997) (explaining that parties may not manufacture core jurisdiction by their actions). To reiterate, the test for what is a core proceeding is whether the claim invokes a substantive right provided under title 11 or arises only in the context of bankruptcy. Halper, 164 F.3d at 836. The conversion claim does neither. This would explain, then, why the Plaintiffs adduce no authoritystatutory or decisionalfor this proposition.[12] Indeed, the weight of authority is in Defendants' favor. See In re Windsor Comm. Grp., Inc., 79 B.R. 210, 211 (E.D.Pa.1987)(referencing remanded opinion wherein conversion claim deemed non-core); In re Naturally Beautiful Nails, Inc., 252 B.R. 574, 576 (Bankr.M.D.Fla.2000) (same); In re Haugen, 120 B.R. 124, 126 (D.N.D.1990) (same); In re CIS Corp., 172 B.R. 748, 758 (S.D.N.Y.1994) ("Claims asserting the unlawful conversion of property unquestionably arise under state law and are considered non-core proceedings."); Meadowlands Comm. v. Banker's Trust Co., 79 B.R. 198, 200 (D.N.J.1987) (conversion action brought by debtor was non-core); In re Reda, Inc., 60 B.R. 178, 181 (Bankr.N.D.Ill.1986) (same); see also Van Dorn Retail Mgmt., Inc. v. Sovran Bank/DC National, 1991 WL 222061 *4 n. 2 (D.D.C.) (noting in dictum that conversion claims are generally recognized as non-core). Accordingly, the Court finds that the conversion claim is non-core.
That, however, does not end the matter. The corollary issue raised by this ruling is whether this non-core matter is "related" or not. Curiously, Defendants never address that issue. In any event, the Court observes that the count is brought by all Plaintiffs against Mr. Bagga. If prosecuted successfully, this claim could positively affect the bankruptcy estate. For that reason, the Court finds that the conversion claim is a "related" non-core claim.
Counts VI, VII and VIIITurnover
These three counts are brought each by one of three Trustees against all of the Defendants.[13] Each count alleges *333 that certain individual defendants wrongfully transferred money of the respective corporate Debtor to the individual defendants. Section 542 provides, in pertinent part, that "an entity . . . in possession, custody or control, during the case of property that the trustee may use, sell, or lease under § 363 of this title . . . shall deliver to the trustee, and account for, such property or the value of such property . . ." 11 U.S.C. § 542(a). Although each count is styled "turnover," Defendants reject that characterization. They argue that the assets which Plaintiffs demand to be turned over are the subject of dispute between the parties. Defendants' Brief, 12. Therefore, their argument goes, these counts are not turnover claims. In response, Plaintiff offers the rather circular argument that all they need to show to establish a viable turnover claim is that the money demanded is property of the estate. Plaintiffs' Brief, 7. Do these counts raise claims for turnover?
Examination of the question whether an action is properly characterized as a turnover proceeding typically occurs in connection with a determination whether a matter is a core or non-core proceeding. See e.g., Beard v. Braunstein, 914 F.2d 434, 443-44 (3d Cir.1990); see also In re Asousa Partnership, 264 B.R. 376, 384 (Bankr.E.D.Pa.2001)("Turnover under 11 U.S.C. § 542 is a remedy available to debtors to obtain what is acknowledged to be property of the bankruptcy estate."); see also Creative Data Forms, Inc. v. Pennsylvania Minority Business Development Authority (In re Creative Data Forms, Inc.), 41 B.R. 334, 336 (Bankr.E.D.Pa. 1984) ("[I]f the debtor does not have the right to possess or use the property at the commencement of the case, a turnover action cannot be a tool to acquire such rights."), aff'd, 72 B.R. 619 (E.D.Pa.1985), aff'd, 800 F.2d 1132 (3d Cir.1986) (table). Numerous courts have held that a turnover is not proper where a bona fide dispute exists. See In re Allegheny Health Education and Research Foundation, 233 B.R. 671, 677 (Bankr.W.D.Pa.1999) citing U.S. v. Inslaw, Inc., 932 F.2d 1467, 1472 (D.C.Cir.1991) ("It is settled law' that turnover actions under § 542 cannot be used `to demand assets whose title is in dispute'") see also In re 2045 Wheatsheaf Associates, 1998 WL 910228 *10 (Bankr. E.D.Pa.) (quoting In re Johnson, 215 B.R. 381, 386 (Bankr.N.D.Ill.1997), to the effect that "[t]urnover under § 542 of the Code `is not intended as a remedy to determine disputed rights of parties to property. Rather, it is intended as a remedy to obtain what is acknowledged to be property of the bankruptcy estate.'"); In re LiTenda Mortgage Corp., 246 B.R. 185, 195 (Bankr.D.N.J.2000) citing In re CIS Corp., supra, 172 B.R. at 760 ("The terms `matured, payable on demand, or payable on order' create a strong textual inference that an action should be regarded as a turnover only when there is no legitimate dispute over what is owed to the debtor."); In re F & L Plumbing & Heating Co., 114 B.R. 370, 376-77 (E.D.N.Y.1990) (explaining that where no set fund exists and other parties may have legal rights to the monies sought, no turnover action lies); In re Ven-Mar Intern., Inc., 166 B.R. 191, 192-93 (Bankr.S.D.Fla.1994) (holding that § 542 does not provide a means to recover property where a dispute exists between the parties); In re Matheney, 138 B.R. 541, 546 (Bankr.S.D.Ohio 1992) (stating that an action is properly characterized as one for turnover when the trustee or debtor in possession is seeking to obtain property of the debtor, not property owed to the debtor); In re Kenston Management Co., 137 B.R. 100, 107 (Bankr.E.D.N.Y. 1992) (holding that an action for turnover only exists if the debt has matured and is "specific in its terms as to the amount due *334 and payable"); In re FLR Company, Inc., 58 B.R. 632, 634 (Bankr.W.D.Pa.1985) ("Implicit in the bankruptcy context of turnover is the idea that the property being sought is clearly the property of the Debtor but not in the Debtor's possession. Turnover, 11 U.S.C. § 542, is not the provision of the Code to determine the rights of the parties in legitimate contract disputes.") Do these counts involve a claim subject to dispute?
The Third Circuit has explained that a "bona fide dispute" exists only when there is "a genuine issue of material fact that bears upon the debtor's liability, or a meritorious contention as to the application of law to undisputed facts." B.D.W. Associates v. Busy Beaver Bldg. Ctrs., 865 F.2d 65, 66 (3d Cir.1989) (adopting standard enunciated in In re Busick, 831 F.2d 745, 746 (7th Cir.1987) which, in turn adopted In re Lough, 57 B.R. 993, 997 (Bankr. E.D.Mich.1986) with gloss: requiring that fact or legal issue in dispute be "substantial"). Applying this definition to the three counts, the Court sees that the Defendants "adamantly" dispute that they have done anything wrong or that they diverted money from the Debtors to themselves. Defendants' Brief, 12. Thus, Plaintiffs' argument that a finding that the property sought, to be turned over is property of the estate begs the question. At this stage in the litigation, the Court does not know whether the funds sought to be recovered are (or are not) estate property. There exists, then, a bona fide dispute on that material issue which, in turn, means that the claims in Counts VI through VIII are not strictly "turnover" claims. For that reason, the Court finds that such claims are non-core.
However, yet again, the Defendants' analysis is incomplete. Having confirmed their contention that these counts are non-core, the Court must delve further to determine if any are nonetheless "related" matters. Count VI alleges that property of United was transferred by individual defendants to themselves and other entities with no legitimate business purpose. Complaint ¶¶ 219-222 In Count VII, essentially the same thing is alleged as to have happened to Jamuna. There, it is alleged that its revenues were transferred to United, among other defendants, and with no legitimate business purpose. Id. ¶¶ 223-28. Likewise, Count VIII alleges that funds which were the property of Bagga Enterprises were improperly transferred to other defendants. Id. ¶¶ 230-35. Should all or part of those transferred funds be recovered, the respective estate would be affected in a positive manner. Therefore, the Court finds that Counts VI, VII and VIII are "related", non-core matters.
Count IXFraud
This count raises a claim under the Pennsylvania common law of fraud in the inducement. See Eigen v. Textron Lycoming Reciprocating Engine Div., 874 A.2d 1179, 1185 (Pa.Super.2005) (listing the elements of fraud in the inducement as:(1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance.) The Baggas are alleged to have intentionally made materially false representations to induce FL's predecessor in interest to loan them money. Complaint, ¶¶ 239-43. That lender justifiably relied on false financial statements to its detriment. Id. ¶¶ 244-46.
While both parties agree that this count is non-core, they disagree on whether it is *335 a "related" claim. Plaintiffs maintain that the fraud claim is non-core but "related" for two reasons: first, it is "factually related" to the core fraudulent transfer claim; and, second, under the Joint Prosecution Order, any recovery will inure to the benefit of the bankruptcy estate. Plaintiffs' Brief, 8. Defendants maintain that this count is wholly unrelated to the case as it is brought by FL on its own behalf only and does not involve the Trustee plaintiffs. Defendants' Brief, 9.
Plaintiffs' first argumentthat there is commonality between the fraud and the fraudulent transfer claims sufficient to render the former "related"is as unsuccessful here as it was when raised in support of the argument that the conversion claim was core. The same can be said, however, for Defendants' argument; to wit, that the Trustee must be one of the litigants for a bankruptcy court to have even "related to" jurisdiction. What matters, the Third Circuit explained in Pacor, is
whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy. E.g., In re Hall, 30 B.R. at 802; In re General Oil Distributors, Inc., 21 B.R. 888, 892 n. 13 (Bankr.E.D.N.Y. 1982); In re U.S. Air Duct Corp., 8 B.R. 848, 851 (Bankr.N.D.N.Y.1981); 1 Collier on Bankruptcy ¶ 3.01 at 3-49. Thus, the proceeding need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.
743 F.2d at 994. This reveals as persuasive Plaintiffs' second argument; to wit, that the Joint Prosecution Order will affect this bankruptcy estate. If prosecuted successfully, the fraud claim would positively affect these bankruptcy estates. For that reason, the Court finds that Count IX is a non-core proceeding which is related to these bankruptcy estates.
Counts XI through XIVBreach of Fiduciary Duty
Counts XI through XIV allege four instances of fiduciary misfeasance and/or assisting or abetting such conduct. Certain individual defendantsqua fiduciariesare accused of unjustly enriching themselves at the Debtors' expense. See Count XI. Mr. and Mrs. Bagga are alleged to have stripped assets from their companies, including the Debtors. See Count XII. At the same time, they are charged with causing Bagga Enterprises and Jamuna Real Estate to become even more insolvent. See Count XIII. Finally, those individual defendants not fiduciaries are supposed to have aided or abetted those who were as the latter violated their oaths. See Count XIV. Each of these counts states a claim under Pennsylvania law. See Westlake Plastic Co. v. O'Donnell, 182 F.R.D. 165, 171 (E.D.Pa.) (observing that self-dealing is an example of a breach of fiduciary duty citing 15 Pa. C.S.A. § 512); In re Specialty Tape Corp., 132 B.R. 297, 301 (Bankr.W.D.Pa.1991) (holding that former officers-directors breached their fiduciary duty to the debtor when they transferred the debtor's assets, including equipment that, deprived the debtor from servicing its customers and deriving income, to a corporation of which they were also officers, and directors); Official Committee of Unsecured Creditors v. R.F. Lafferty & Co., 267 F.3d 340, 349 (3d Cir.2001) ("[W]e conclude that, if faced with the issue, the Pennsylvania Supreme Court would determine that `deepening insolvency' may give rise to a cognizable injury."); Koken v. Steinberg, *336 825 A.2d 723, 732 (Pa.Cmwlth.2003) citing Pierce v. Rossetta Corp., 1992 WL 165817 *8 (E.D.Pa.1992) (listing elements for a claim for aiding and abetting breach of a fiduciary duty under Pennsylvania law as: (1) a breach of a fiduciary duty owed to another; (2) knowledge of the breach by the aider and abettor; and (3) substantial assistance or encouragement by the aider and abettor in effecting that breach). That takes the Court to the primary question: are these counts core or non-core?
As with the conversion and fraud counts, Plaintiffs' argument that Counts XI through XIV are core is made by association. The breach of fiduciary duty claims, say the Plaintiff, are "factually related" to the fraudulent transfer and turnover claims. Plaintiffs Brief, 10. For their part, Defendants raise the same argument as they did towards the conversion and fraud counts: the claims arise under state statute and common law and preceded the bankruptcy. Defendant's Brief, 9, 10.[14]
While the Third Circuit has not had occasion to decide whether such claims are core or not, the majority of courts which addressed the question have held that a cause of action for breach of fiduciary duty is a non-core, related proceeding. See Diamond Mort. Corp. v. Sugar, 913 F.2d 1233, 1239 (7th Cir.1990); In re Cannon, 277 F.3d 838, 846 (6th Cir.2002); McCord v. Papantoniou (In re Papantoniou), 316 B.R. 113, 121 (E.D.N.Y.2004); In re Delaware & Hudson Rwy., 122 B.R. 887, 894 (D.Del.1991); Johnson v. State Farm Mut. Ins. Co. (In re Guenther), 65 B.R. 660, 651 (Bankr.D.Colo.1986); In re Michigan REIT, 87 B.R. 447, 453 (E.D.Mich.1988); In re SRC Holding Corp., 352 B.R. 103, 166 (Bankr.D.Minn.2006); In re 4 Front Petroleum Inc., 345 B.R. 744, 750 (Bankr. N.D.Okla.2006); Allen v. J.K. Harris & Co., 331 B.R. 634, 641 (E.D.Pa.2005) but see contra Glinka v. Abraham and Rose Co., Ltd., 1994 WL 905714 *8 (D.Vt.1994) This Court has previously held with the majority. See Eagle Enterprises, Inc., 259 B.R. 83, 87-88 (Bankr.E.D.Pa.2001) (finding in abstention context that breach of fiduciary duty claims are non-core related).
Without question, these claims cannot be said to invoke a substantive right provided by title 11 or to arise only in the context of a bankruptcy. Thus, they are not "core" claims. However, what can be said with certainty is that if the Plaintiffs prevail on these counts, the estate stands to benefit. Accordingly, this Court concludes that these counts raise "non-core, related" matters.
Conclusion
The Court makes the following determination as to the core/non-core status of each of the fifteen counts of the Complaint: Counts I, II, III, V, VI, VII, VIII, IX, X, XI, XII, XIII, XIV, and XV are non-core, related claims. Count IV is a core proceeding.[15]

Order
And Now, in accordance with the District Court's Order dated October 6, 2006, it is hereby:
*337 Ordered, that Counts I, II, III, V, VI, VII, VIII, IX, X, XI, XII, XIII, XIV, and XV of this adversary proceeding are non-core, related claims, Count IV is a core proceeding.
NOTES
[1] That is the extent of the District Court's directive: to determine which counts raise "core" claims and which counts raise noncore claims.
[2] See 28 U.S.C. § 157(b)(3) ("The bankruptcy judge shall determine, on the judge's own motion or on timely motion of a party, whether a proceeding is a core proceeding under this subsection or is a proceeding that is otherwise related to a case under Title 11." (emphasis added)) Whether a proceeding is core or non-core is important in determining if the reference should be withdrawn. In re American Capital Equipment, LLC, 325 B.R. 372, 377 (W.D.Pa.2005)
[3] Mr. Krasny is the Trustee for United and Jamuna; Mr. Seitz serves as Trustee of Bagga Enterprises.
[4] The Court entered a Joint Prosecution Order permitting the Trustee and FL to join as plaintiffs. See Order dated August 17, 2005 filed in the main case.
[5] Title 28 provides, in pertinent part, that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b) (emphasis added). District Courts are therefore empowered to refer bankruptcy matters to bankruptcy court:

Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district.
28 U.S.C. § 157(a)(emphasis added).
[6] Core proceedings include, but are not limited to

(A) matters concerning the administration of the estate;
(B) allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interests for the purposes of confirming a plan under chapter 11, 12, or 13 of title 11 but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11;
(C) counterclaims by the estate against persons filing claims against the estate;
(D) orders in respect to obtaining credit;
(E) orders to turn over property of the estate;
(F) proceedings to determine, avoid, or recover preferences;
(G) motions to terminate, annul, or modify the automatic stay;
(H) proceedings to determine, avoid, or recover fraudulent conveyances;
(I) determinations as to the dischargeability of particular debts;
(J) objections to discharges;
(K) determinations of the validity, extent, or priority of liens;
(L) confirmations of plans;
(M) orders approving the use or lease of property, including the use of cash collateral;
(N) orders approving the sale of property other than property resulting from claims brought by the estate against persons who have not filed claims against the estate;
(O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims; and
(P) recognition of foreign proceedings and other matters under chapter 15 of title 11.
28 U.S.C. § 157(b)(2).
[7] The statute does provide, however, that all parties may consent to the Bankruptcy Court's entry of a final judgment. See U.S.C. § 157(c)(2).
[8] That does not mean, however, that the Court will analyze each count seriatim. Given that several counts raise the same cause of action (albeit against different Defendants), the Court will analyze each common cause of action as a group.
[9] 18 U.S.C. § 1961 et seq.
[10] Originally, the Plaintiffs had alleged that counts IV (Fraudulent Transfer), VI, VII and VIII (all for Turnover under 11 U.S.C. § 542) were "core" proceedings and that the remaining counts were non-core related proceedings. See Complaint, ¶ 8. Plaintiffs now argue that all counts except I, H and IX are core. No explanation for this change is offered, except to point out that this switch was articulated at the April 17, 2006 hearing. See Defendants' Brief, 6 n. 3.
[11] Plaintiffs explain that Count XV pleads a remedy as opposed to a cause of action. See Plaintiff's Brief, 10 (stating that "it logically follows the core/non-core status of the individual causes of action"). No authority for this unorthodox practice is offered.
[12] The Court's own, research reveals one rather dated line of authority which accepts Plaintiffs' premise. See In re Lombard-Wall, Inc., 48 B.R. 986, 991 (S.D.N.Y.1985) (finding that claim in question "so logically connected" to an issue in the case "that judicial economy and fairness dictate that they be decided in the same forum.") That reasoning, however, is contrary to controlling Third Circuit authority.
[13] Counts VI and VII are brought by Mr. Krasny as Trustee for United and Jamuna, respectively; Count VIII is brought by Mr. Seitz as Trustee for Bagga Enterprises. See Complaint.
[14] Here, again, Defendants do not specify whether the non-core claims are related or not.
[15] This ruling is specifically limited to the precise directive set forth in the District Court's Remand Order. The Court was not asked or directed by the District Court to opine on the other issues which the parties in their written submissions have asked the Court to discuss. Under the circumstances the Court believes it would be inappropriate to unilaterally go beyond the issue referred to it. Accordingly, the Court declines to address other issues raised by the parties in their briefs concerning the motion for withdrawal of the reference pending in the District Court.